Good afternoon, Your Honors. May it please the Court. Thank you, Your Honors. Ultimately, Your Honors, I believe this case boils down to Mr. Rogers spent 452 days in jail based upon, at the very least, reckless representations which were made by these officers. To start off with, I know there's been, since the briefing's even taken place in this, some of the cases that we've relied upon have also been, we've had one that has been, I believe, remanded back to the Fifth Circuit by the U.S. Supreme Court in, I'm sorry, in Cole. I believe it changed names to Hunter v. Cole when it came back. But nonetheless, in Mullineaux, which the Supreme Court then sent Hunter v. Cole back, one of the issues there is, in Cole, was whether or not the evidence was intentionally fabricated which led to the plaintiff in that case being prosecuted. Now, this Court had originally held that the intentional fabrication, it was clearly established law that an officer cannot use fabricated evidence to bring prosecution or to prosecute the plaintiff. And I believe that— It wasn't fabricated here. It was illegally obtained, right? In this case, yes, Your Honor. Do you have any cases—I know you've got your Fourth Amendment argument, but you seem to be going first on this due process argument. Any cases finding that due process violation where evidence got suppressed and there were misstatements made in connection with the suppression, but that there was actually evidence that supported probable cause to bring charges? What we're alleging in this case, it's all the cases that deal with intentionally fabricated evidence. In this case, the intentional fabrication is the location of the evidence. But aren't all those cases cases where the person was actually innocent and so they trumped up charges, made statements, planted evidence, and an innocent person was charged, sometimes convicted, and that's what that line of cases recognizes? Well, Your Honor, I will recognize— Do you apply it to a suppression situation like this one? First, I want to recognize Mr. Rogers was not a perfect person. However, the charges, these charges in regards to the drugs in this truck, he very clearly and plainly stated in this litigation, the only reason when the officers came to him with a statement, and the officers are the ones who wrote out the statement for him, where he claimed ownership of the drugs that were found on the other property was because the officers said either you claim these or we're starting to arrest your family members outside. And he did, which was probably not the smartest thing, but he being a strong family person as far as his relationships go, he took the blame for it. And during that same testimony, one of the people that were outside was his aunt who died from an aneurysm that resulted from this entire incident, and that's why he took the blame. So I'm not here to say Mr. Rogers was perfect. He pled guilty to the state law charges of selling drugs. But it's just like just because there's drugs in your neighbor's house, it's not appropriate for the police to say, well, they're your drugs, we're going to charge you with them. Yes, they were found in his— the misstatements were made in connection with the suppression issue as opposed to whether the person actually committed the crime. Not suppression per se, but the—and I know there's this whole— lately there's been a big clearly established law thing that's been several cases in the Supreme Court lately. And the Supreme Court said it doesn't have to be the exact same, but nonetheless, the officers— and I think the question of fact that comes in is whether or not it was an intentional fabrication because based upon all the evidence that we have, it seems apparent that there had been some fabrications of testimony, which ultimately should be for the jury to decide was this a fabrication or was it not. These inferences should be made by the jury based upon the differences in testimony, the documentary evidence, which point blank disproves one of the points that the district court relied upon, which was, well, the truck was registered to Mr. Rogers, and they knew that when they went to do the search. However, I believe it's in the record at 1889, was a printout, which shows that clearly they didn't run the tag information on this truck until after the search had already taken place. Wasn't there some sort of explanation that someone else— Some random unidentified person, which wouldn't even be admissible, would be hearsay. We don't even know who it was. But even then, if they ran the tag, there should still be a printout from when they did it. And if they were able to— No documentation. No documentation of only one tag. Now, there was another vehicle, a Cadillac, which was run even later. So there were, in fact, two vehicles which were ran, but both of them, according to the deposition testimony with the documentary evidence, showed that the tags were not run. Nobody knew who the vehicles belonged to until after the searches took place. When did Rogers give them his keys? When he arrived at the scene. At some point after his arrival. There's no timeline. But according to Mr. Rogers, the search had already taken place of the truck. And if you read the way the report is, of course, I don't know if it's— If you read the report and you take it in chronological order, it even says the drugs were found— Now, it doesn't say the drugs were found before he arrived, but it says the search of the property, we found this. Then the next line says that Kermit Rogers was brought to the scene where he had keys which unlocked the truck. However, if you're taking the report for what it says, the drugs had already been found at that point in time. And we all know that officers have a way to unlock the truck. You don't need the keys. I mean, it's— Why were the drugs in an evidence bag? What does that mean? Well, I don't know about that, Your Honor. I'm assuming, just based upon that, that they were probably placed in an evidence bag. They were in a bag is all I can tell you from the record. I don't recall them being in an evidence bag. But if they were in an evidence bag, obviously that would be a bigger problem as to why is that there. But that hasn't been brought up. The district court based its finding of qualified immunity on the fact that the court found that the testimony and conclusion of the officers persuaded the judge that they were reasonable in assuming that the 320A structure was part of the same premises as 320, right? Yes, Your Honor. And part of that is— Just tell me what, if any, questions of fact arise out of that finding. One of the things that the district court pointed to very specifically was the registration of the red truck, which based upon the documentary evidence, they did not know that at the time of the search. Judge Carr, who's a Justice Court judge, said that they called around 1130, around that time in the morning. And, again, we'll get to that in a second. But the tag was not run until at least 139 that afternoon. And the significance of that was they based the fact that 320A was the same because they thought Roger's truck was parked in front of it. That's what they're claiming after the fact, after they learned that. It's one of those, well, we found this out afterwards and we'll try to use it to support what we've been saying. What you're saying is a question of fact as to when they learned that the truck belonged to Roger's. That's correct, Your Honor. And if what they say is true, one of the things that Defendant Warren said was, well, I told the judge that this was Kermit Roger's truck parked over here. And, again, based upon the document, what we have documented, that cannot be true because it had not been run yet. And there's still questions regarding, and this was addressed by Judge Mills, and I know there are arguments otherwise as to whether or not that phone call ever took place. And, yes, we have the judge testify that he did remember a phone call, but he gave very scant details about that phone call. And I would, and Justice Court judges feel these kind of phone calls all the time. But why would that judge, that state court judge, expand the search warrant if in Mississippi you can't expand a search warrant on a phone call? I don't understand that. Well, that's where testimony is conflicting. One of the things that has been argued is it wasn't an expansion of the search warrant. It was just asking the judge if we're okay. But that has not always been the case. They have before, during the suppression portions of it, referred to it as an expansion of the search warrant, which is not allowed, as Judge Mills points out, in the underlying criminal matter. You cannot do that in Mississippi. You cannot. In fact, even under federal law, there is a way to do that via telephone, but it's a very stringent process which requires recordings and all these various things. None of those were followed. Isn't there also a question of what the officers told the judge about where 320A was in relation to 320? There is, Your Honor. If, for example, Defendant Warren said what he had testified to or put in his report, well, Your Honor, this is right behind the property, which is the way that he has put it in the report. It's the way he's testified to. That would be a complete misrepresentation and a very reckless representation based upon the court's finding that it was at least 200, 250 yards away with a separate address, a separate driveway, and all these other things, which Judge Carr never once mentions any of that. In fact, his testimony was, well, they told me it looked suspicious and they wanted to go check it out, and he said they'd be all right. And that's assuming that this is the phone call Judge Carr was talking about because one of the defendants in this case claimed he had two phones. He used one phone approximately 10 minutes before the search started. There's no other records on that phone of any phone calls. But then there's another phone number, which they can't get the records to, that we can't look at. But they're saying that he didn't use the phone. He used 10 minutes before the search started to call Judge Carr, which is another inference that a jury should decide, okay, well, we've got a phone. Why didn't you use this phone or that phone? That's a jury question. All of this, when we get to the Fourth Amendment, just the search itself, before we even get down the chain to the other Fourth and Fourteenth Amendment claims and misrepresentations as to whether or not they were objectively reasonable with the search itself. Now, if we move into the Fourth Amendment claims regarding their misrepresentations, Melton v. Phillips, which is another case, which is the location of the red truck, which even the U.S. attorney filed a motion for reconsideration saying that the perpetual mischaracterization of the location of the red truck was the reason that they opposed the motion to suppress and it was the reason for their filings. The U.S. attorney even said that these officers had perpetually mischaracterized the location of the red truck, and that's the reason that they took the argument to Judge Mills to begin with that the red truck was on the same property or that it was reasonable to search it. That was after the judge blamed the prosecutor, and then the prosecutor filed a motion for reconsideration saying, no, it's the cops. You're correct, Your Honor. He did, and they did. But nonetheless, in my opinion, the prosecutor had every right to say, Judge, I'm sorry, but this is just like in a plaintiff's case. If my client tells me he didn't run the red light, I'm going to say he didn't run the red light until evidence is presented to say otherwise. That evidence was clearly presented at the suppression hearing for both sides, and the prosecutor, yes, he was trying to save himself in that motion, but nonetheless, he's very clear, and it wasn't even the assistant U.S. attorney who handled the case, it was another who filed the motion. But nonetheless, he wanted to be sure the judge was aware, look, this is what they told me. He said that Defendant Warren verbally assured him of these facts before the suppression. You're relying on that filing in the criminal case? Isn't that hearsay? Well, what the judge found to be finding the facts may qualify as hearsay. However, it's a public record what the assistant U.S. attorney has filed, and those are sworn, and he's a sworn officer of the court. What his statements are, as far as my understanding, everything I file is sworn. Still hearsay as to what he's saying the officer said. No, that's admission by part of the opponent then. That's something that Defendant Warren has brought up, so therefore it's obviously admission against his interest if it's a mischaracterization of what's happened, so therefore it would be an exception to the hearsay rule. But in Melton, which is one reason I think the district court— In the own remand in the motion to suppress, the district court said that the search of the red truck fell outside the good faith exception to the warrant. Yes, Your Honor. Does that give you any help in challenging her conclusion that here the officers were, in effect, in good faith? That they were not in good faith? The fact that it fell outside the good faith exception? That has been my argument in this case. However, the district court disagreed with me and said that because the officers were not parties in that action, the findings of Judge Mills would not clearly stop them. However, I do believe Judge Mills' findings still is persuasively— You haven't enrolled on that? Sir? You haven't enrolled. I support you. No, Your Honor, because, well, we did file several— We didn't do it in this briefing. We did file motions for restitute Cuyahoga to clearly stop along that. But if I move on a little bit towards the Fourth Amendment, which the district court never really addressed, which is one of my primary issues, the district court, in the original motion for summary judgment, not the reconsidered part, simply overlooked or didn't really address the Fourth Amendment claim that they misrepresented everything. And this comes back to another case, which is now being reconsidered en banc, as I understand it, Melton v. Phillips, which is, again, an excessive force case, which is probably—and I don't know the facts. I'm just assuming that it's because of the Mullineaux case regarding excessive force and what's clearly established. Because Mullineaux did not deal with misrepresentations. It was an excessive force case that the U.S. Supreme Court sent back, both the Cole case now that Melton's being reconsidered, but in Melton v. Phillips, the court held that even the affiant— or I'm sorry, even the officer who was not the one who put in the misinformation could be held responsible. But we don't have to go that far. We have the actual officer who had the misrepresentations. In that case, an individual had been misidentified, and the court said they could be held liable for this in Melton v. Phillips based upon the reckless disregard for that individual. Here we have a clear reckless disregard and misrepresentations of where the truck was. Not once in Officer Warren's reports does he ever mention a phone call, does he ever mention a separate property. And I think that Judge Mills stated it, although he did say it was hyperbole in the underlying criminal matter, based upon what Defendant Warren was saying, it's okay to search a vehicle in Arkansas because it's behind the house. Because that's essentially all the officer ever said. And as the cases continued from the criminal to the civil, his testimony went from it's behind the house to, well, it's at most 100 yards away. And then as we got to depositions, he confirmed, well, maybe about 200 yards away, which also shows that this officer knew he was wrong in what he had put in his report. You expressly concede that the sheriff, Sheriff Johnson, you're not appealing against him. Correct. I don't see any arguments you make about the dismissal of the county and the city. Are you also conceding that there's no policy that you can point to? Your Honor, I think that as I finished that and said I probably should have put in a paragraph, but I do agree that there was not a policy in effect at the time. I still, although it was not argued. You're going against the two individual officers, Howell and Warren. And I'll touch on Officer Howell for a second because I know he was one. Essentially, the argument to him just boils down the same effect that you have when an officer is present and they allow constitutional violations to take place in excessive force context. That officer is also liable for failing to prevent constitutional violations. Were they both present the whole time? They were both present at the same time, made the phone call, and authorized the search, although Officer Howell was not the one who verbally authorized the search. Thank you, Your Honor. May it please the Court. Michael Chase here for Officer Warren and Lee County. Mr. Wade focused a lot on the part of the qualified immunity test and whether the second part of the qualified immunity test is whether there's a constitutional violation at all. Actually, I guess that's the first part. And sometimes the courts, I think the courts recognize sometimes that's the easier question, the less complicated question, is not whether the actions of the officers met some test, but whether there was a constitutional violation in the first place. And I think that's what we – I think that's the avenue here is that, as we said in Part 3, I think, or a brief, that there's simply no constitutional violation, even if you accept that what Cole said, the Cole case, was the law in 2009, which we don't think it was. But even if you say it was, there was still no constitutional violation. Well, what if 320A is a separate premise that wasn't covered by the warrant? Well, that goes to the objective reasonableness of the conduct of the officers. But what I'm saying is even if they weren't objectively reasonable, there's still no constitutional violation in the 14th Amendment. If I've got a warrant to search 1000 Jackson Avenue and I search 1001 Jackson Avenue, that's not – you're not protected, are you? There's no warrant to search that residence. That's true if it's clear that that's two separate premises. In this case, this was a rural setting. The building appeared to be a shop building. It did not appear to be a residence. Well, isn't your question a fact about that? I mean, one version is – and maybe there's no real dispute. I mean, it's 250 yards away, and it's difficult to even see 320A from 320. And it's a wooded area between the two structures. There's a dirt path connecting them. So, I mean, to me the best argument was that the red truck belonged to Rogers, so they made the assumption that this was part of his property. But then you get into a question of when they learned it was Rogers' truck. So, straighten me out on that. Well, on Rogers' truck is they're raising the issue about this printout, and they offered no evidence, actual evidence, as to what that printout meant. It's sheer speculation that the printout called into question their testimony that they ran the plate before. It gives the time, though, doesn't it? Well, again, there's no evidence to connect that printout with what they did. But in any event – It's not a printout showing what they – the call they made? There was no evidence showing that that was a printout showing – no, that that was done at the time they made the call. Well, what else would it have done? That was never clarified. Didn't the police report itself show that when the call was made and when they searched the truck? The point is even if you say that they didn't run the tag, they still had the keys to the vehicle, which they got from Rogers. Well, he disputes that, though, doesn't he? No, he says – he admits that they got the keys from him. When he gave the keys to the policeman? Well, when he got there, and it's just speculation on his part that he thinks the search or says the search was done before he got there, but he has no evidence to do that. There's no evidence that they broke into the truck to do the search. He gave them his keys. He denied that he gave the keys to the officers to open the truck, didn't he? No, well, at one point he did, but he said that they got them out of his other truck that he was driving at the time. So he admitted that, that they went to and got them out of his truck. Did the officers see the red truck from the 320 property? I believe the evidence is they could not see the truck. They saw the truck once they got out, once they followed the path. They went around the dirt road. Because there were other buildings, other buildings along in the area, and they searched as they got to them, and they worked their way around and saw the shop, what appeared to be a shop building, and the vehicles beside that. And is there any evidence that they knew it belonged to Rogers before they actually did this search that now you don't think they did? Any evidence that what belonged to Rogers? The truck, the red truck. Yes, the evidence. Well, their testimony was that they ran the plate. Again, there was nothing actual, no actual evidence to contradict that. Second is there's no question other than his speculation that they did the search first that they got the keys from him. So once he, obviously he has the keys to the red truck, it's a reasonable assumption that the truck belongs to him. And if it's on his – Rogers had made the arrest before they got the keys. Okay. I think this may be a question. There was drugs found in the house. The warrant covered the house, of course, where Rogers was doing business out, where he was doing business out. So it covered that, and they searched that house and found drugs there. And so they had also observed him on three or four occasions and had a confidential informant purchase narcotics from him. So they had him on those things. So that's when they arrested him on that, brought him to there. He was not arrested on the day of the event for the drugs in the truck. That had nothing to do with his arrest. He was arrested based on what they found in the house and based on the three or four incidents where the confidential informant had bought drugs from him. So the warrant was based on the confidential informant buys. That's correct. The report showed he was arrested at 1-08, and the truck registration was obtained, I guess that's based on the readout, at 1-29. Right. That's, again, based on whatever that meant, but there's no evidence before the court as to what that really meant, I don't think. But the point – I'd like to make the point is that even if you grant that they didn't have – that they didn't know these things, it still appeared to be the same property, and that's one thing. The path, that was – The path's about the only thing, though, isn't it? Well, and I'd like to make the point, too, that even if you say that they had no – that they didn't have these things, there's still – you have to answer the question, was it a constitutional violation? And the court said – the district court said there was no constitutional violation of the 14th Amendment based on the statement in the report that the red truck was found on the property because it didn't shock the conscience. And I think – we think that was correct. But a search claim, the court did find a constitutional violation, just found it wasn't clearly established, right? I don't think the court actually got to the question of whether that was a violation. She just – Okay, but she ruled on the second crime. You don't read her as finding that there was a constitutional violation consistent with what Judge Mills found in the criminal case because it was on the other property? No, she – well, no. The constitutional violation would have been if – and he's not saying seeking damages for, you know, you invaded my truck, and so I was damaged because you opened the doors of my truck. He's saying it was because I was seized, that he was seized on the federal charge. I know he's alleging this whole due process argument, but I thought he was also saying it was an unconstitutional search. He says, but the search led to his seizure, the unlawful search of the truck led to his seizure on the federal drug charges. And what I'm trying to point out is that that's not the case. Well, but he wants to suppress the evidence in the truck that was found which led to the federal charges. That's true. I mean, it's not just his arrest. He wants to suppress the drugs that were found in the truck. There's two things. One, the Fourth Amendment claim, if you fabricate evidence to cause somebody to be arrested, that's a Fourth Amendment violation. If you fabricate evidence to cause someone to be convicted or under coal to be charged, then that's a Fourteenth Amendment violation. He's also just saying it was an unlawful search, right? A little simpler. Isn't that the first thing that gets addressed by the district court? I don't think that – I don't believe his claim is strictly based on the search. It's based on the fact that he was seized on the federal charges based on the search. Okay. Maybe we were just talking to Samantha. He is challenging the lawfulness of the search. True. And he says because of the unlawful search, he was seized on the federal – and charged under federal law. He makes the argument that it's based on trumped-up evidence. But if the search is not covered by the warrant, it's an unlawful search, isn't it? Well, there's – and I don't think it was ever developed. You have the automobile exception, which Judge Mills apparently was buying at first, but he backed off of that in his second opinion. But my point is that even if you say that we're looking here as on the Fourth Amendment, did the search – did what Officer Warren put in his report cause Mr. Warren to be charged for the federal crime? And it did not because the court says – it says that the Fourteenth Amendment is the deliberate manufacture of evidence to cause someone to be charged under COLE, if that's – assuming that's still the law. Warren, all he did was put in his report. He didn't fabricate the evidence. He simply put in his report as to where that was located, and the judge found that that – it was a reasonable supposition that that was on the property. So that was not a false statement. But he was not arrested. He was not arrested on the day. Why aren't there questions of fact about whether it was reasonable for the officer to assume that 429A or 420A was the same premises as 420? Because you had all the evidence that led to the appearance, objective reasonableness, of the conclusion that that truck was on the property that was covered by the warrant. The whole thing is the truck? I mean, is that all? That's it. They didn't find anything in the building. The truck appeared to be on the property because it was his – the same – apparently the same land all connected together, no fences in between, no clear boundaries, no lines of demarcation between the two buildings, two structures. The second structure was a small structure that appeared to be a shop. There were other structures, non-residential structures on the property, which he doesn't dispute were part of the property. And then the truck is there, and it's his truck. And as Judge Mill said in the first ruling, it would be very unusual for somebody to park their truck on someone else's property. Yeah, but then you get to the question of when they found it, when they knew that it was his truck. I don't think that he's really raised a genuine issue on that because it's all speculation. No question that they had the keys. They got the keys from him. At some point, yeah. Yes. He's saying he thinks they searched that, but he has no proof. He was not there when they searched. He didn't observe the search, so he doesn't know when it took place. So it's sheer speculation on his part as to when the search took place. Nobody lived at 320A, right? I'm sorry? Nobody lived at 320A. No, I think it was used for recreation, like a rec building or something. It was owned by a different person, though. That's correct. But they didn't know that until much, much later. And you got a path connecting them? I guess one of the questions on qualified immunity is was there any clearly established law that says under those circumstances you've got to run the title of the property and go to the courthouse and do the property search before you can reasonably assume that a person's truck is parked on his property. I think there's plenty of cases saying that if a warrant covered one address, you can't use it to search another address. That's true, unless there could be good faith exceptions and reasonableness exceptions. For instance, there's a case. Well, the good faith exception in the Fourth Amendment just says in criminal law you're not going to suppress evidence. It is about the exclusionary rule that even if there's a Fourth Amendment violation, if the officer is acting in good faith, you're not going to suppress the evidence. It doesn't mean there's not a Fourth Amendment violation. On that, I can't believe we're still not on the same page about this, but maybe I was confused. As I read the district court, I'm looking back now at the first summary judgment opinion. There was this reconsideration on the due process stuff. Did Judge Acock not find that the warrant did not allow the search of 320A and the automobile exception did not apply? Okay, I thought you were saying earlier she didn't, that there was no finding on the automobile exception. No, she didn't. But then she found they're entitled to qualified immunity because they didn't act objectively unreasonably. She said it didn't apply because of no exigent circumstances, which may not be correct. But in any event, I'd like to make this point. You have to show that the deliberate manufacture of evidence caused a person to be charged. They say by putting in his report that the truck was found on the property, that was the manufacture of evidence. But all he did was put in the statement. That was his last event. He was not involved at all in bringing the federal charges. They never came to him. He was indicted. He was actually arrested on state charges, convicted on state charges, and sent to the penitentiary. And months later, he was indicted by the federal grand jury. But they've not pointed to any evidence that he was in federal custody at any time before the indictment. So the indictment was the impartial intermediary that broke the chain of causation between. . . The indictment was based on the drugs found in the red truck. But to get an indictment, they had to have somebody go before the grand jury and testify from personal knowledge what they found at the scene. Warren did not. . . there's no evidence, no allegation that Warren ever testified before the grand jury. He couldn't manufacture evidence. He didn't manufacture the evidence. If he had gone and planted the drugs for someone else to find and testify, that would be manufacturing evidence. Simply saying that it was found on the property is not manufacturing evidence. His statement is not evidence. It wouldn't be admissible. He's got to go and testify. The cases are where people come in and testify in court and cause somebody to be either charged or convicted. So did Officer Howell testify? I don't think there's any allegation in anything in the record showing Officer Howell testified at the. . . Was that Judge Acock in the criminal case that found that the search of the red truck fell outside the good faith exception to the warrant and she quashed the warrant? No, Judge Acock was not involved in the criminal case. Who held that? Judge Mills. So why doesn't the same thing flow in this case? If it's not in good faith in the criminal case, why is it good faith in the civil case? It's a different standard, and Judge Acock had the development of testimony that was in the record as to what actually happened. More so, Judge Mills really had at the beginning was the prosecutor's statement, which he for some reason accepted. He had a lot of facts. He had a lot of facts. Yes, after we had a hearing. He quashed the indictment, right? Right. He had a lot of facts. I mean, the facts he put in Judge Mills' ruling said it was unreasonable for them to assume that 320A was covered by the warrant. Well, Judge, that's a separate issue for Judge . . . A separate judge is about the only difference. That's true, but that makes the difference in this case because Judge Acock was the judge in this case. I understand that. Same facts, though. Thank you. Good afternoon, Your Honors. I'm John Hill. I represent Tupelo and Paul Howell. As I understand the dialogue between Judge Costa and Mr. Wade, Tupelo is no longer, need not worry about Tupelo further, so I'll address my comments as to Paul Howell, who was a Tupelo police officer. I echo Mr. Chase's comments as to claims against Mr. Warren, but he's not my client. Officer Howell was my client. And I think it's important to draw from Officer Howell's perspective a distinction between Warren and Howell and what happened here. Howell is a TPD employee, not a Lee County employee. This search and seizure and everything that occurred here was out in the county, outside the municipal limits of any incorporated entity. Jurisdiction was vested with Lee County. It was a Lee County operation. And when you talk about Paul Howell, the principal things that you consider is what he didn't do. And what he didn't do was have anything to do with the confidential informant operation. He didn't obtain the warrant. He didn't direct the search and seizure. He didn't direct the operation. He didn't write any report. He didn't review any report. What he did was, when it was brought to his attention that there was this 320A building and a red truck that had been found to have been registered in the plaintiff's name, what should we do? He walked out there with Officer Warren and suggested to Officer Warren, why don't you call the judge who issued the warrant and see what he thinks. That's what he did. That sums up Paul Howell's— Is there a law in Mississippi that oral warrants are not permissible? He didn't, Paul. If you read Paul Howell's testimony, he didn't suggest that the warrant be extended. He said call the judge and see if the warrant covers this. Does the warrant we have cover this? He's right there when the call is being made, apparently. The judge's testimony, Record 1263, that's just the reason he wanted the extension. That's the judge's characterization of the phone call. Sure, and Paul Howell heard questions asked. He didn't hear what Judge Carr said. It's like you're calling Mr. Wade and I'm listening to— Where would the judge get that idea that they wanted an extension unless he was told by the officer on the other end of the call? I don't know. And let me say this about Judge Carr. He's testifying on a phone call that happened five years ago that the point, the issue was whether the phone call was made. The details of that phone call, I couldn't remember the details of the phone call made five weeks ago. Probably not— That's good impeachment, but it's in the record that he characterizes it as an extension, which we have to accept as at least one side of the story for purposes of summary judgment. So be it. Maybe I'm wrong. My point is, Paul Howell clearly did not see it that way. He didn't suggest that the warrant be extended. He suggested that a phone call be made to the judge to see if this warrant covered that circumstance. Then they went ahead with the search. Sure. They went ahead with the search after the phone call. They did. So he must have thought it was extended. He must have thought that it was covered by the existing warrant. I think that's what Paul Howell—to begin with, Paul Howell's testimony was that he was confident that the truck was covered because he was told both by other police officers and by the plaintiff that it was the plaintiff's truck. And so he thought that—again, it goes back—he thought it was all one piece of property. But, be that as it may, he thought it was Roger's truck, and therefore the truck was fair game. He did question whether the 320A building itself might be subject to being searched. Wouldn't that be the only reason he could search the truck would be if 320A and 320 were the same premises? And they thought that it was. They learned later that it wasn't. But at the time— But don't you have back questions? You've got a 320A that's 200, 250 yards away, wooded in between, got a dirt path going to it, that they're the same premises? I think, again, the question, it seems to me, from the officer's perspective is, was there a good—a valid reason to believe that there was? Not was there a valid reason to believe that there wasn't? Sure, you could have concluded that it wasn't, but you certainly could have concluded that it was. If they had doubts about it, they wouldn't have called the judge. Absolutely. If they had doubts about it, well, they wouldn't have called the judge. If they didn't have any doubts about it, I think you're right. They wouldn't have called the judge. They had a question, so what they did was not objectively unreasonable. Call the judge and see what he thinks. He issued the warrant. He's the judge. Do you think that this is covered by the warrant that you issued? He says, I think it is. So they went forward. Wasn't there a question about how many details he gave them about the description of the property? Maybe he told them it was 100 feet away or 100 yards away? I mean, it seems to me there was not a clear description to the judge about the location of 320A in relation to 320. The truth is I don't know for certain. That was a telephone call that probably lasted a minute or a very short period of time. Warren's testimony in the suppression hearing was it was about 100 yards away. Howell's testimony in the civil case was it was about 200 yards away. I hadn't been there. I don't know how far away it was. All right. Thank you, sir. We have the audience. Yes, ma'am. All right, Mr. Wade. You have four whole minutes. Thank you, Your Honors. Just to address one of the things in regards to the printout that we've talked so much about, it reads on the bottom. It's got the numbers on it, and then it says at 1329-28 on the date. I think it's pretty clear any time these CAD readouts are done, that's always the stamp that's done when it's done. I don't really think there's a true question about that. It says it was at 1329. That's when it's printed out, or that's when the search is done? That's when it's done. Now, we don't have anything in the record that states that. For each officer, if another officer did one, would it only show up when she logged in? Well, it should show up when that particular search was done is the way the CAD system works. Now, this isn't in the record, but I just wanted to point that out. It says at 1329. This wasn't printed out at the site. I can assure you of that. It was not printed out. They don't have printers just to print out pieces of paper like this. And then also in regards to some of the timing that was just talked about, again, I'll go back to the report that was written by Officer Warren, where it says very clearly that agents also discovered approximately 236 grams of alleged crack cocaine, which was discovered inside a locked red Chevrolet, and it says truck tag, parts of the property. The very next sentence, it says Kermit Rogers was detained at a family member's house. So unless he's just got everything out of chronological order in his report, he's also in, again, we're at the summary judgment stage, so even if it may or may not be accurate, every inference is to be made in Mr. Rogers' favor. So if we're just looking at the report, at the time the drugs are located in this red truck, Mr. Rogers wasn't there. He's at a family member's house. And it does say that he was in possession of the keys. Let's see. It doesn't say that they used the keys to unlock or anything of that nature. And another thing that was also pointed out, I think it's fairly clear that these were constitutional violations. Every judge has held that, whether Judge Mills or Judge Aycock, so I won't go into those in detail. The question that really, one thing that was mentioned was this federal court indictment that Officer Warren wasn't at. And I don't believe he was at the grand jury, but if we go back to Melton v. Phillips, that case is dealing with an officer who gave improper information to another officer who then used that information to get a warrant. The assistant U.S. attorney was very clear that the report that was used for the indictment purposes was copied from Warren. So to insulate Officer Warren just because somebody else then used my information, it doesn't insulate him from that fact because he didn't take his own report to the grand jury. The report and the DEA agent who would have testified there used Officer Warren's report because the DEA agent wasn't, as my understanding, may or may not have been present when this was going on. But nonetheless, he copied Officer Warren's report. We also, it was just talked about, some property lines and different things. I don't think, I can't recognize any photographs on the record or not, but there are fences, there are tree lines, there are multiple demarcations. You do have a dirt path that does connect the properties. But you also have a mailbox that's for the 328 property. You also have a different utility box for the 328 property. And there are processes in place if you have a question about whether or not a warrant covers a certain area. You secure the property and you get a warrant. Same way you do it for a vehicle. The same reason Judge Acock held the exception did not apply to the search of the vehicle. We have processes in place to protect constitutional rights like this. You secure the property, you get your warrant, and you search it. Then you don't have these types of questions. That's the whole point. Same way in federal, under the federal law, if you want to call a judge about a warrant, you record it. So that way we don't have to have these questions of what was said. These officers knew what they were doing was not proper. That's evidenced by the fact that they said they called a judge. They knew this was a whole separate property. They knew there were processes and procedures in place. They could file it, and they didn't do it. And, Your Honors, thank you for your time. All right. Thank you, Mr. Wade. All right, that concludes our docket for this afternoon for oral arguments, and we will be in recess until 9 o'clock in the morning.